**Erick Lionel MILLER, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–13–00062–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 5, 2013.

Rehearing En Banc Overruled
Jan. 16, 2014.

Stephen D. Jackson, Conroe, for appellant.

Jason Larman, Conroe, for the State of Texas.

Panel consists of Chief Justice FROST and Justices BOYCE and JAMISON.

## OPINION

WILLIAM J. BOYCE, Justice.

Appellant pleaded guilty to possession with intent to deliver or manufacture a controlled substance. Before his guilty plea, appellant filed a motion to suppress evidence on grounds that the traffic stop was made without reasonable suspicion of criminal activity. The trial court denied appellant's motion to suppress. In two issues, appellant challenges the trial court's ruling; he contends that (1) his Fourth Amendment rights were violated when a police officer stopped his vehicle without reasonable suspicion of criminal activity [1]; and (2) the police officer was not acting in his community-caretaking capacity when he stopped the vehicle. We affirm.

## BACKGROUND

Officer Kevin Cooke, who was working with the Montgomery County Precinct 4 Constable's Office at the time, was patrolling U.S. Highway 59 when he observed a vehicle traveling northbound in the center lane of traffic. He observed the vehicle begin to straddle the divider line between the center lane and the left lane of traffic. Based upon his training and approximately twenty-one years of law enforcement experience, Cooke "conducted a traffic stop on the vehicle to check the welfare of the driver." Cooke testified he observed the vehicle fail to maintain a single lane for several hundred feet before stopping the vehicle. The video taken from Cooke's vehicle camera confirms that the vehicle straddled the lane-marker for several hundred feet. Because the details of Cooke's testimony are crucial to our determination of the validity of the traffic stop, we cite verbatim the following relevant excerpts:

[Prosecutor] Q. All right. Well, just give us an idea—just so the record's clear, why did you stop this vehicle?

[Cooke] A. To check the welfare of the driver.

1. It is undisputed this was a warrantless traffic stop.

Q. And why did you need to check the—believe you needed to check the welfare of the driver?

A. Because the driver's operating a motor vehicle in a public roadway with other vehicles on the roadway as well and the vehicle is crossing over the line. And that could be an indicator of someone falling asleep, intoxicated, overmedicated.

Q. Okay. And have you in the course of your experience often encountered folks that did the same thing that [the driver] did that, in fact, were based on your experience intoxicated, sleepy, overmedicated, drowsy, whatever?

A. Yes.

Q. Unfit to operate a motor vehicle safely on our highways?

A. Yes, sir.

On cross-examination:

Q. Okay. Now, the—the primary reason or, I guess, what you told Mr. Freyer is the reason you pulled this young lady over is for what we call community caretaking. Correct?

A. Yes, sir.

Q. Okay. You wanted to check the welfare of the driver and/or the passengers in the vehicle, correct?

A. The driver. Yes, sir.

Q. Okay. And you want to make sure if they were sleepy or intoxicated or make sure nothing was going wrong in the vehicle.

A. To make sure they were okay to continue on their journey. Yes, sir.

\* \* \*

Q. Okay. And your concern for their safety for—the concern was you wanted to make sure the driver wasn't sleepy. That was one of the reasons, right?

A. Right.

Q. To see if the driver might be intoxicated?

A. Correct.

Q. Or had some other kind of physical ailment that you might want to check on. Correct?

A. Right. Sleepy, intoxicated, overmedicated.

After Cooke stopped the vehicle, the occupants gave conflicting stories about where they had been, how long they had been there, and where they were going. After searching the vehicle, Cooke found approximately eleven ounces of cocaine hidden in the vehicle's spare tire. The driver and two passengers were arrested for possession with intent to deliver.

Appellant, who was one of the passengers, filed a motion to suppress the evidence on the grounds that Cooke did not have reasonable suspicion to stop the vehicle. After a hearing, the trial court denied appellant's motion. On appeal, appellant claims that the initial stop of the vehicle was illegal, and therefore any evidence obtained as a result of the stop should have been suppressed.

#### STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, an appellate court applies an abuse of discretion standard and overturns the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex.Crim.App. 2011). We use a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness; we apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.* at 922–23.

The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221

S.W.3d 680, 687 (Tex.Crim.App.2007). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). If the trial court makes no explicit findings of fact, we imply fact findings to support the court's ruling when the evidence supports the implied findings. *Gutierrez*, 221 S.W.3d at 687.[2] We "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim.App.2002).

## ANALYSIS

▄▄▄▄ Appellant contends in his first issue that the trial court erred in denying his motion to suppress because his rights were violated when police stopped his vehicle without reasonable suspicion of criminal activity. Appellant claims that he has standing to challenge the traffic stop even though he was merely a passenger. A defendant can challenge the validity of the initial stop of a vehicle in which he was a passenger, since his personal liberty and freedom were intruded on by that action. *See Lewis v. State*, 664 S.W.2d 345, 348 (Tex.Crim.App.1984).[3] An investigative detention requires a police officer to have a reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App. 1997). The reasonableness of a temporary detention is determined from a totality of the circumstances. *Woods*, 956 S.W.2d at 38. We determine, using an objective

standard, whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex.App.-Austin 1998, pet. ref'd). If an officer has a reasonable basis for suspecting a person has committed a traffic offense, then the officer legally may initiate a traffic stop. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993). Reasonable suspicion is present if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App.2005). An officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because its legality rests on the totality of the circumstances viewed objectively. *See Simpson v. State*, 29 S.W.3d 324, 328 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

▄▄▄▄ Appellant argues that the initial stop was illegal because Cooke did not offer specific, articulable facts that the driver of the vehicle committed a traffic offense. Section 545.060 of the Texas Transportation Code states in pertinent part that "an operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code § 545.060(a). This statute is

---

**2.** This case was transferred to the Fourteenth Court of Appeals from the Ninth Court of Appeals in Beaumont; we apply transferor court's precedents if there is a conflict. Tex. R.App. P. 41.3. As discussed below, there is no conflict between the Fourteenth Court of Appeals and the Ninth Court of Appeals on the dispositive legal issues in this case.

**3.** Although the State challenged appellant's standing in responding to his motion to suppress, it does not raise this argument on appeal.

violated only when the vehicle's movement is unsafe. *See Ehrhart v. State,* 9 S.W.3d 929, 930 (Tex.App.-Beaumont 2000, no pet.); *Hernandez,* 983 S.W.2d at 871.

Appellant relies on several cases in which reviewing courts have concluded that there is insufficient justification for a traffic stop when there is evidence that the appellant failed to maintain a single lane but no additional testimony that the movement out of a single lane is unsafe. *Fowler v. State,* 266 S.W.3d 498 (Tex.App.-Fort Worth 2008, pet. ref'd); *Eichler v. State,* 117 S.W.3d 897 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Aviles v. State,* 23 S.W.3d 74 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *Ehrhart v. State,* 9 S.W.3d 929 (Tex.App.-Beaumont 2000, no pet.). In each case, the stop was based solely on observation of an alleged traffic offense; and there was no testimony that the officer suspected any other offense such as driving while intoxicated.

Appellant misplaces his reliance on these cases because they expressly state that (1) the issue of driving while intoxicated was not raised; or (2) there was no evidence that the officers suspected the defendants might be intoxicated. *See Fowler,* 266 S.W.3d at 499; *Eichler,* 117 S.W.3d at 900; *Aviles,* 23 S.W.3d at 75; *Ehrhart,* 9 S.W.3d at 930; *Hernandez,* 983 S.W.2d at 870; *see also State v. Cerny,* 28 S.W.3d 796, 799 (Tex.App.-Corpus Christi 2000, no pet.) ("[The officer] did not stop appellee for any other reason than failure to maintain a single lane."). Here, in contrast, Cooke testified that he suspected the driver might be intoxicated, overmedicated, or falling asleep when he observed the driver moving out of her lane.

The circumstances here parallel *Gajewski v. State,* 944 S.W.2d 450, 451 (Tex.App.-Houston [14th Dist.] 1997, no pet.), in which a Houston police officer stopped the defendant after observing his vehicle weaving between lanes of traffic. After

the defendant failed a series of field sobriety tests, he was arrested for driving while intoxicated. *See id.* The defendant argued that the stop was illegal because there was no evidence that his behavior affected the safety of other motorists, and therefore did not violate any traffic law. *See id.* at 452. In rejecting the defendant's argument, the court stated:

> [T]here is no requirement that a particular statute is violated in order to give rise to reasonable suspicion. Although not an inherently illegal act, when the officer observed appellant's car weaving between traffic lanes, reasonable suspicion existed to believe appellant was driving the motor vehicle while intoxicated, or that some activity out of the ordinary is or has occurred, so as to justify the temporary stop of defendant's car.

*Id.*

Cooke testified he observed the vehicle move out of its lane for several hundred feet and testified that crossing the center line "could be an indicator of someone falling asleep, intoxicated, overmedicated." Cooke answered "Yes," to a question asking, "And have you in the course of your experience often encountered folks that did the same thing that Ms. Downs did that, in fact, were based on your experience intoxicated, sleepy, overmedicated, drowsy, whatever?" After reviewing the evidence as stated above and giving full consideration to the totality of the circumstances and Cooke's law enforcement experience, we conclude the trial court reasonably could have concluded that (1) Cooke did not stop the vehicle solely for failing to maintain a single lane, and (2) Cooke observed driving behavior that reasonably lead him to believe appellant was driving while intoxicated, asleep, overmedicated, or otherwise impaired. *See Curtis v. State,* 238 S.W.3d 376, 381 (Tex.Crim.App. 2007) (holding officer's extensive experi-

ence in detecting intoxicated drivers, coupled with his training to view weaving specifically as an indication of intoxicated driving, established reasonable suspicion to justify an investigative detention when he observed vehicle weaving in and out of his lane several times over a short distance late at night). These circumstances established a reasonable suspicion that crime was being committed. The trial court did not abuse its discretion in denying the motion to suppress based on this record. We overrule appellant's first issue. Because we have found the evidence supports the trial court's implied finding that Cooke had a reasonable suspicion to stop the vehicle, we need not address appellant's second issue arguing Cooke was not acting within a community-caretaking capacity. *See Willover*, 70 S.W.3d at 845.

We affirm the trial court's judgment.

MARTHA HILL JAMISON, Justice, dissenting.

Officer Cooke had no reasonable suspicion of criminal activity when he stopped the vehicle in which appellant was a passenger, and the trial judge abused her discretion in denying appellant's motion to suppress. Because the majority concludes otherwise, I respectfully dissent.

I agree with the majority that because the trial court did not issue findings of fact or conclusions of law, we must view the evidence in the light most favorable to the trial court's implied findings. However, the evidence must support the court's ruling.

I agree with the majority that appellant has standing, though merely a passenger, to challenge the validity of the stop. I also agree that there was no evidence of a violation of section 545.060 of the Texas Transportation Code.[1] And I agree that an officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because its legality rests on the totality of the circumstances viewed objectively. *See ante* pp. 696–97; *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).[2]

Although the majority found the evidence supports the trial court's implied finding that Cooke had a reasonable suspicion to stop the subject vehicle ("SUV"), it is unclear what criminal activity could possibly have triggered that suspicion.[3] The only evidence presented at the hearing was Cooke's testimony and a videotaped recording of the traffic stop. Both must be considered.

1. The majority distinguishes the section 545.060 cases cited by appellant because they did not involve "evidence that the officers suspected the defendants might be intoxicated," but does not specifically address whether there otherwise was evidence of a violation in this case. *See ante* pp. 696–97. I have found no Texas cases holding that merely straddling a divider line briefly without evidence of heavy traffic or otherwise unsafe conditions constitutes a violation of 545.060.

2. Although the majority purports not to reach appellant's argument that Cooke was not exercising a "community caretaking" function, which I agree does not apply here, *see infra* p. 700 n. 5, it appears to accept the officer's testimony in this regard. *See ante* pp. 694–

95, 695, 697–98. I would not credit that testimony to support a reasonable suspicion of intoxication.

3. The majority holds that the trial court could have reasonably concluded that Cooke "observed driving behavior that reasonably led him to believe appellant was driving while intoxicated, asleep [sic], over-medicated, or otherwise impaired" and, thus, that Cooke did not stop the vehicle solely for failing to maintain a single lane. *See ante* p. 697. This leaves it unclear, however, just what criminal activity the majority is stating supported the stop. A lane change while sleepy? While over-medicated? While otherwise impaired? While intoxicated? Does the majority consider all of these behaviors criminal?

Cooke testified that the videotape began recording when he activated his overhead lights. The recording device is designed to begin capturing images one minute before the time of activation. When questioned by the prosecutor, Cooke testified that it was "possible" that there was a traffic violation that did not appear on the videotape, but he did not articulate any. On cross-examination, Cooke acknowledged that he only observed the SUV cross the dividing line on one occasion, and he could not recall any instance that drew his attention to the SUV other than what appeared on the videotape. He further acknowledged that the movement of the SUV was not erratic but was a "slow drift" over the dividing line.

The majority emphasizes the officer's training and law enforcement experience. *See ante* pp. 694–95, 697–98. What training and experience did Cooke testify to? The officer has 21 years' law enforcement experience and 2,400 training hours in unspecified subjects. He has made countless traffic stops, including hundreds for failure to maintain a single lane of traffic. He has taken part in a number of narcotics investigations, most of them involving traffic stops. Cooke attended a class called Desert Snow, which taught him to look for "dope and money in vehicles" and "how to deal with people that move dope and money." Cooke testified that he was trained to look for indicators such as out-of-state plates and other things that would give him suspicion that somebody is involved in moving drugs north. He has made hundreds of drug-related traffic stops where he has found drugs.

Although not mentioned by the majority, Cooke testified that one of the things that could have drawn his attention to the SUV was the fact it had Michigan plates and was traveling along a known drug corridor. He further acknowledged that the out-of-state license plate may have been a factor in his decision to stop the SUV. Cooke additionally testified that he did not initiate the stop until he had driven alongside the SUV and observed the driver. The majority, instead, focuses on Cooke's answering "yes" to the question, "And have you in the course of your experience often encountered folks that did the same thing that Ms. Downs did that, in fact, were based on your experience intoxicated, sleepy, overmedicated, drowsy, whatever?" However, neither Cooke nor the majority take the additional step of explaining how observing the SUV slowly and briefly drift over a lane dividing line (not established to be an illegal act under the circumstances presented) gave Cooke reasonable suspicion to stop the SUV in the absence of additional observations. *See generally Coble v. State*, 330 S.W.3d 253, 277 & n. 62 (Tex.Crim.App.2010) (explaining that a matter cannot be established merely by the ipse dixit of a witness no matter how well-qualified; the basis of the statement must be shown, linking the conclusions to the facts).

The videotape reveals that the SUV was traveling in the center lane of a three-lane divided highway at a constant speed. No other vehicle passed or was passed by either Cooke or the SUV before the stop, which occurs at about the one minute and forty-five second mark of the videotape. As Cooke approached the SUV from behind in the right-hand lane, the SUV drifted towards the left. The videotape is not definitive, but the left wheels of the SUV may have straddled the dividing line between the center and left lanes for a few seconds. At highway speeds, the few seconds could have covered "hundreds of feet," as testified to by Cooke. As Cooke dropped back and moved to the center lane, the SUV drifted back into the center of its lane, where it remained. Rather than pulling over the SUV at this time, however, Cooke continued into the left

lane and accelerated until he drew even with the SUV driver's window. Only then did Cooke drop behind the SUV and initiate the traffic stop.

In order to stop the vehicle based on a reasonable suspicion of the possibility of intoxication,[4] Cooke needed to have specific and articulable facts known to him, coupled with his training, general experience, and rational inferences from those facts, such that it would objectively justify the conclusion that the action taken by the officer was appropriate. *Davis v. State*, 947 S.W.2d 240, 243–44 (Tex.Crim.App. 1997). The reasonableness of a detention is determined from a totality of the circumstances. *Eichler v. State*, 117 S.W.3d 897, 900 (Tex.App.-Houston [14th Dist.] 2003, no pet.). We determine, using an objective standard, whether the facts available to the officer at the moment of detention would warrant a person of reasonable caution to believe that the action taken was appropriate. *Id.* In the present case, the sole evidence concerning intoxication was Cooke's statement that the driver might be "sleepy, intoxicated, overmedicated." The officer did not provide observations, other than a "slow drift" over the dividing line to support his opinion that the driver of the SUV might be intoxicated. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex.Crim.App.2007); *see also Bass v. State*, 64 S.W.3d 646, 649–50 (Tex.App.-Texarkana, 2001, pet.ref'd) (holding officer's testimony of swerving was not sufficient to carry burden of presenting articulable facts demonstrating the reasonableness of traffic stop on suspicion driver was intoxicated, noting officer did

not provide additional circumstances, such as time, location, or the vehicle's movement, that would have led a reasonable officer to suspect driver was intoxicated). Although Cooke additionally testified that he observed the SUV had Michigan plates and was traveling along a known drug corridor and that he did not initiate the traffic stop until he had driven alongside the SUV and observed the driver, neither the State nor the majority suggests that these additional factors objectively justified the stop as a reasonable one.

As seen on the videotape, there was no action on the part of the driver of the SUV aside from briefly straddling the lane divider that would indicate intoxication. Therefore, the validity of the stop is not countenanced on the theory of reasonable suspicion of intoxication. *See Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex.App.-Beaumont 2000, no pet.); *see also Graham v. State*, No. 08–03–00315–CR, 2005 WL 182691, at *2 (Tex.App.-El Paso Jan. 27, 2005, no pet.) (not designated for publication) (holding evidence was insufficient to support reasonable suspicion to stop motorist for suspected intoxication where vehicle briefly contacted curb one time).[5]

At the suppression hearing, the State failed to demonstrate that Cooke possessed knowledge of specific and articulable facts sufficient to objectively justify the conclusion that stopping the SUV was an appropriate action. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App.2005). As the subsequent search of the vehicle is a fruit of the illegal stop, the evidence obtained from the search should have been

---

**4.** If the majority intended to identify other criminal activity that would validate the stop, this argument applies to that conduct also.

**5.** At two points in his testimony, Cooke stated that his primary motivation for stopping the vehicle was community caretaking; however, the circumstances presented do not meet the

standards set forth by the Court of Criminal Appeals for validating such stops. *See Corbin v. State*, 85 S.W.3d 272, 277–78 (Tex.Crim. App.2002). Therefore, the stop was not supported by Cooke's reference to the community caretaking function. The Majority purports not to reach this issue.

suppressed. Accordingly, the trial court erred in overruling the motion to suppress. *See State v. Mazuca,* 375 S.W.3d 294, 306 (Tex.Crim.App.2012); *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App.1992); *Smith v. State,* 58 S.W.3d 784, 793–94 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). I would reverse the judgment and remand the case for further proceedings.